RUPRECHT v. DELACAMP et al.

(District Court, S. D. New York. November 25, 1908.)

1. SHIPPING (§ 43*)—CHARTER PARTY—RIGHT TO CANCEL—READY FOR LOADING "BY" A DATE STATED.

A provision of a charter party giving the charterer the option to cancel if the vessel was not "ready for loading by November 20, 1903, at Yokohama," required her to be ready on or before that date, and the charterer was not entitled to cancel because she was not ready at the beginning of the day, where she was a few hours later.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 166; Dec. Dig. § 43.*

For other definitions, see Words and Phrases, vol. 1, pp. 929-932.]

2. SHIPPING (§ 43*) — CHARTER PARTY—RIGHT TO CANCEL—VESSEL "READY FOR LOADING."

A sailing ship was ready to load on the date required by her charter, except for the fact that she had taken in a quantity of mud ballast which would require to be removed before one of the hatches could be used. Ballast of some kind was necessary to stiffen the ship and render her seaworthy after removal of her prior cargo, and the master had applied to the charterers to know the character of her next cargo, but had not been informed, and had put in the mud ballast temporarily. *Held* that, the same being necessary, its presence did not prevent her from being "ready for loading," nor entitle the charterers to cancel.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 165; Dec. Dig. § 43.*

For other definitions. see Words and Phrases, vol. 7, p. 5935.

Cancellation, surrender, or rescission of charter of vessel, see note to McNear v. Leblond, 61 C. C. A. 569.]

In Admiralty.

Convers & Kirlin (J. Parker Kirlin, of counsel), for libelant.

Robinson, Biddle & Benedict (Edward Grenville Benedict, of counsel), for respondents.

HOLT, District Judge. This suit was brought to recover the sum of $5,000, as liquidated damages for the breach of a charter party. The libelant chartered the ship Lawhill to the respondents. The charter contained a clause providing that the charterers should have the option of canceling the charter party if the vessel was not "ready for loading by November 20, 1903, at Yokohama." On the morning of November 20th the charterers gave notice that they canceled the charter on the ground that she was not ready for loading by November 20th. Thereafter, on November 28, 1903, a supplementary agreement was entered into, by which the respondents agreed to load the vessel under the terms of the original charter at a reduction of $5,000 in the

freight, without prejudice to the subsequent determination of the question whether the charterers were justified in canceling the charter. This suit was brought to determine that question.

The Lawhill was not ready for loading on November 20th at the beginning of the working day. The cargo was not entirely out until shortly before noon. The respondents claim that it was necessary that she should be ready for loading at the beginning of November 20th, and that the clause of the charter party allowing the charterers to have the option of canceling the charter "if vessel is not ready for loading by November 20" required that the vessel should be ready for loading before November 20th. I think that the expression "by November 20" means on or before that date. That is a common meaning of the word "by" as shown in the definitions in the dictionaries, and has been so construed in many cases. Oxley v. Bridge, Doug. 67; Coonley v. Anderson, 1 Hill (N. Y.) 519; Ferguson v. Coleman, 3 Rich. Law (S. C.) 99, 45 Am. Dec. 761.

The principal ground, however, upon which the respondent claims that it had a right to cancel the charter is that the vessel was not "ready for loading by November 20 at Yokohama," because at that time she had taken on board a lot of mud ballast, which occupied a portion of the hold. The evidence shows that a sailing vessel like the Lawhill requires some ballast in her when all the cargo is taken out, otherwise she is in danger of capsizing, and is not seaworthy. Usually, on voyages from Japan, sufficient mineral ore or other heavy freight is shipped to serve the purpose of ballast, and it is customary, before the outgoing cargo is entirely discharged, to put in the hold sufficient of the new cargo to keep the ship properly stiffened. Several days before November 20th the captain of the Lawhill applied to the charterers at Yokohama to know what kind of a cargo was to be furnished, but received no information. Thereupon the captain took on board what is called "mud ballast," about 300 tons of clay, which was placed in the hold, near No. 2 hatch, in a pile about 30 by 20 feet square and rising up about 17 or 18 feet, and thereupon the cargo was all taken out and the vessel ready for reloading by about noon on the 20th. The respondents insist that while this mud ballast was in the ship the vessel was not completely "ready to load" in all her holds. There is no doubt that the right of cancellation is stricti juris, and that, as a general rule, a vessel is not ready to load, within the meaning of such a clause, unless her cargo is completely discharged and she is ready for loading in all her holds, so that the charterer has complete control of every portion of the ship available for cargo. But to this general rule there is an exception, that the presence of stiffening ballast sufficient to keep the vessel upright does not prevent her from being ready. Carver on Carriage by Sea (5th Ed.) § 221; Vaughan v. Campbell, 2 T. L. R. 33. The respondents claim that, instead of mud ballast, shingle. or stone ballast should have been taken in, and refer to a clause of the charter which provides:

"Cargo not to exceed what the vessel can reasonably stow and carry over and above her tackles, provisions and furniture, and the necessary dry shingle ballast, dunnage and matting which are to be provided by the master."

If dry shingle or stone ballast is placed in the bottom of a ship, cargo can be put upon it, but it cannot be placed upon mud ballast. Mud ballast, as I understand the evidence, is always a mere temporary ballast to stiffen the ship. If heavy merchandise is carried, it in itself constitutes ballast. If light merchandise is carried, stone ballast is taken in and the merchandise put upon it. In this case, freights had gone down, and the respondents were therefore anxious to cancel the charter party. They declined to say what kind of a cargo they wished to ship. They had a strict right to do so, but their position was very technical. The master was bound to tender the ship on the day designated. But I do not think he was bound to put in stone ballast, which is more expensive than mud ballast, so long as the charterers refused to tell him what kind of a cargo they proposed to ship. If they should afterwards decide to ship mineral ore, the stone ballast would all have to come out, for the charterer is entitled to the entire carrying capacity of the ship if he wishes to ship a kind of cargo which will dispense with the use of ballast. I think, under these circumstances, that the master, in order to make a formal tender of the ship, was entitled to use the cheapest kind of stiffening ballast that he could get. The respondents claim that the fact that the captain ordered 600 tons of stone ballast on November 18th shows that he recognized his obligation to furnish shingle ballast, and that his failure to obtain the entire 600 tons and put it in the ship on the 20th shows that the ship was not ready for delivery on that day. But I think that that fact is immaterial. The respondents had taken a very technical position. They wanted to cancel the charter party because freights had fallen. The captain wanted to hold them to their contract for the same reason. Each was standing on his technical rights. Under such circumstances, I think that the intentions of the captain in regard to the ultimate use of stone ballast are immaterial. He tendered the ship, ready to load in all her holds, except that portion of the ship's space which was occupied by stiffening ballast, and I think such a tender was sufficient.

My conclusion is that the libelant should recover $5,000, interest and costs, as demanded in the libel.